# STATE EX REL. MAU v. AUSHERMAN, DISTRICT COURT COMMISSIONER, ET AL.

Prohibition—Jurisdiction of Supreme Court—Joint Ditches, Summary Proceedings for Division of Water—Water and Water Rights—District Court Commissioner—Jurisdiction—Courts—Res Judicata—Writ and Process—Change of Venue.

1. Under the constitutional provision granting to the Supreme Court a general superintending control over all inferior courts, said court is vested with jurisdiction, in proper cases, to issue writs of prohibition to restrain the action of inferior courts in excess of their jurisdiction.

2. An error or mistake in practice affords no ground for the issuance of the writ of prohibition, unless it involves the doing of something contrary to the law of the land.

3. The object of the writ of prohibition is the prevention of the exercise by an inferior court of a jurisdiction with which it has not been vested by law, and the writ issues in such case only when the party seeking it is without other adequate remedy for the wrong about to be inflicted.

4. The writ of prohibition is granted to prevent action, and not to undo what has already been done.

5. While former adjudication may constitute a good defense to the proceeding upon some issue involved, and may control the decision of some question to be determined, it is not a bar to jurisdiction.

6. Where a court or court commissioner has authority to consider the question whether the parties are joint owners, in a proceeding under the statute authorizing the summary appointment of a water distributer of water from a ditch in case the joint owners thereof cannot agree as to a division of the water, a former adjudication denying the existence of such joint ownership may require a finding in accordance therewith, but will not operate to defeat jurisdiction.

7 Upon the filing of a verified petition by an alleged joint owner of an irrigating ditch, stating that the other alleged joint owners and himself are unable to agree relative to the dis-

tribution or diversion of the water received through the ditch, and asking the appointment of some suitable person to take charge of the ditch, and distribute the water to the parties entitled thereto, the District Court acquires jurisdiction of the subject matter, under the provisions of the statute affording a summary remedy in such cases (R. S., Secs. 908-916), and, upon obtaining jurisdiction of the parties by the statutory procedure, it is authorized to proceed to some determination in the cause.

8. It may be found necessary to dismiss the proceedings for want of jurisdiction subsequently appearing, but that matter must be determined by the court or magistrate before whom the proceeding is heard.

9. In such a proceeding the fact that the defendant, by his answer or other pleading, denies that the parties are joint owners, or that the plaintiff has no rights in the ditch, will not *ipso facto* divest the court of jurisdiction.

10. Under the statute providing for the summary appointment of a distributer of water from a ditch, in case the joint owners thereof cannot agree relative to a division of the water (R. S., Secs. 908-916), jurisdiction of the court to entertain the proceedings and enter the prescribed order is not limited to cases where the facts of joint ownership and inability to agree are admitted.

11. If the existence of jurisdictional facts are denied, it becomes the province and duty of the court to determine whether such facts exist, or not, and to act accordingly.

12. The determination of joint ownership in the summary statutory proceeding for the appointment of some person to distribute the water from a ditch owned jointly by two or more persons, is nothing more than the determination of a fact necessary to jurisdiction; and such determination will not amount to a permanent adjudication of the respective titles and interests of the parties in and to the ditch.

13. In a suit for the recovery of damages for the wrongful diversion of water from a certain ditch, and an injunction to restrain further diversions of that water, there was a judgment for damages in favor of plaintiff, and the defendant was therein restrained from "taking or diverting any of the water of the plaintiff flowing in the canal as

described in plaintiff's petition, to-wit, the Mau canal, and the first five feet of water flowing therein." *Held,* that defendant was not thereby enjoined from using the ditch for carrying water appropriated by him, if any, over and above the first five cubic feet flowing therein. *Held, further,* that the pleadings and judgment do not establish an adjudication that plaintiff was the exclusive owner of the ditch.

14. The statute making no provision therefor, a party is not entitled to a change of District Court Commissioner upon filing an affidavit such as may be filed to secure a change of venue or of District Judge.

15. If a District Court Commissioner is disqualified for any reason, objection to his acting may be presented, and he may be prevented from assuming jurisdiction, upon a proper showing in a superior tribunal.

16. In a summary proceeding under the statute for the appointment of a person to distribute the water to the alleged joint owners of an irrigating ditch, the disqualification of the District Court Commissioner to hear and act in the matter was charged by reason of his having been an attorney for one of the petitioners in a suit previously brought against him by the defendant for damages and an injunction growing out of a wrongful diversion by said petitioner of defendant's water flowing in the ditch. *Held,* upon demurrer to petition for writ of prohibition, that a sufficient showing was not made to require prohibition against further action by the commissioner on the ground of such alleged disqualification, especially since the proceedings had passed to final order, so far as he was concerned.

17. Objections that a District Court Commissioner refused to have testimony in a proceeding before him taken by a stenographer, and to allow further time to answer, do not present jurisdictional questions, and hence are not grounds for prohibition.

18. In the summary proceeding for the appointment of a distributer of water in a ditch when joint owners thereof are unable to agree as to a division of the water, the statute provides that summons shall require defendant to appear within five days after the issuance thereof. A summons issued May 13, 1902, required appearance "on or before five days after the date of the return hereof, to-wit,

on the 19th day of May, 1902." The defendant appeared May 19, and filed a demurrer and motion to dismiss. *Held,* that the summons was properly construed as requiring appearance May 19.

[Decided April 20, 1903. On petition for rehearing, August 20, 1903.] (72 Pac., 200; 73 Pac., 548.)

ORIGINAL proceeding for writ of prohibition.

The facts are stated in the opinion.

*J. H. Ryckman,* for relator.

*J. C. Hamm,* for respondent Ausherman.

First, we desire to look at the terms of the constitution which give to the court authority for issuing the writ of prohibition. Referring to Section 3 of Article 5 of the Constitution, we find the following language:

"Sec. 3. The Supreme Court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The Supreme Court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and other writs proper and necessary to the complete exercise of its appellate and revisory jurisdiction."

In this section it is apparent that the original jurisdiction of the Supreme Court is limited to the issuance of writs in quo warranto and mandamus as to state officers, and in habeas corpus proceedings only. The right to issue the writ of prohibition is limited to those cases where necessary and proper to the complete exercise of the appellate and revisory jurisdiction of the court. This case is not now before the court on appeal. This court is not asked to revise the proceedings of the lower court. If such proceedings were had or had been taken to bring this matter before the Supreme Court, in order that it might be heard for the purpose of revision, or an appeal had been taken from the action of the court commissioner to the District Court and thence to this court, undoubtedly, under the constitution,

this court would have jurisdiction to issue the writ of pro-
hibition to aid it in the complete exercise of its revisory or
appellate powers.  This has not been done, and an original
application is filed without the intervention of the appellate
or revisory proceedings asking this court to pass upon some-
thing that is not before it either for revision or on appeal.
This we say, under the terms of the constitution, cannot
be done.  The Supreme Court can only issue original writs,
as provided in the first sentence of the section above quoted.
The other writs, among which is named the writ of pro-
hibition, can only be issued in the complete exercise of the
appellate and revisory powers of the court.  (16 Ency. Pl.
& Pr., 1099, *et seq.*)

The constitution specially limits the issuance of the writ
of prohibition among others named in cases where it is to
aid this court in the exercise of its appellate and revisory
powers.  Reason dictates, then, that if no application has
been made to this court for revision and no appeal has
been taken to this court, the jurisdiction of the court has
not attached, and that the application for the writ is pre-
maturely made and cannot be entertained.  (People v.
Court, 169 Ill., 201 ; Memphis v. Halsey, 12 Heisk. (Tenn.),
210.)

It may be urged that the grant in the constitution is a
grant of original jurisdiction to this court to issue the
writ of prohibition.  Admitting for the argument that may
be true, yet the constitution has specifically and definitely
limited, by its terms, the use to which the original writ
of prohibition can be put by this court, and that is when
"necessary and proper to the complete exercise of its ap-
pellate and revisory jurisdiction."  If there is nothing be-
fore the court on appeal, there can be no jurisdiction to issue
the writ of prohibition in aid thereof.  If there is nothing
before the court for revision, there is no jurisdiction to
issue the writ to aid the court in the complete exercise of
its revisory powers.  The construction which we contend
for as being the true interpretation of our constitution finds

support in the case of Dobson v. Westheimer et al.; 5 Wyo., 34; 36 Pac., 626, in which it is held that the regularity of the proceedings of a court cannot be reviewed on application for a writ of prohibition.

From the facts, then, as set out in the petition, it must be clear that this is an attempt by the petitioner to bring in and have tried by this court upon the petition for an original writ of prohibition issues which have passed to judgment in the court below. It is unnecessary for us to argue or present authorities that the issuance of the writ lies only to restrain the court in doing some judicial act. The facts of the petition show that the court below has already rendered its judgment, and to carry the parallel of the case of Dobson v. Westheimer along with this we have but to say that the only effect of the issuance of this writ would be to interfere with or stop the exercise of the acts of the water distributer, who stands in the same relation to the facts in this case as the Sheriff of Weston County did in that, and he is simply a ministerial officer; his acts are purely ministerial, and the writ of prohibition cannot run under all of the authorities to restrain such acts. Aside from the case already cited determining the policy of our own court, we have the case of State on the relation of the Bank of Chadron v. District Court of Weston County, 5 Wyo., 227; 39 Pac., 749.

*J. H. Ryckman,* for relator.

On petition for rehearing: A citizen of Wyoming cannot be divested of his property, except by verdict of a jury, under due process of law, in a proceeding in which he is in some manner a party, having opportunity to be heard and having a day in court. (First Nat. Bank v. Foster, 61 Pac., 466; Salt Creek Valley Turnpike Co. v. Parks, 50 O. St., 568; 28 L. R. A., 773.) Ditches and water rights are in the nature of realty, and the trial of such property rights must conform to the common law in respect to trial by jury. (Ins. Co. v. U. S., 73 U. S., 759; Morris v. U. S.,

75 U. S., 507.) Joint ownership in a ditch and the extent of the several interests of such owners and of the right to use the water therein are questions of fact involving the most valuable property rights and the right of trial by jury in such cases is secured by the constitution, as the right existed at common law. (Edwards v. Elliott, 36 N. J. L., 449; Emerick v. Harris, 1 Binn., 424; Re Penna. Hall, 5 Pa., 204; Livingston v. Moore, 7 Pet., 552; 8 L., 781; Grim v. Norris, 19 Cal., 140; Koppicus v. State Capitol, 16 Cal., 248.)

The court commissioner found that there was a joint ownership in the ditch, and, therefore, he had jurisdiction, and this court holds such finding conclusive, but he determined his jurisdiction without going into the case on its merits—without touching the gist of the action which this court has said was "the existence of a temporary necessity for the distribution of water." His jurisdiction, therefore, depended on the collateral fact of joint ownership in the ditch, without going into the merits, and the jurisdiction may be questioned collaterally by petition for a writ of prohibition and may be disproved. (17 Ency. L. (2d Ed.), 1084; Cooley Const. Lim. (3d Ed.), 407, and cases cited; Bank v. Wilcox, 15 R. I., 258; Anderson v. Commissioners, 12 O. St., 635, 644; Andrews v. Andrews, U. S. Sup. Court, Feb. 16, 1903.)

In the case of Mau v. Stoner the plaintiff alleged that he had constructed the ditch in question under the laws of Wyoming and appropriated the water of Smith's Fork and applied it to his land each year since 1894. The defendant denied plaintiff had a ditch or water right at all, but pleaded no interest of his own in the ditch or water. The vast preponderance of the evidence was on plaintiff's side, and if the ditch and water were found by the jury to be Mau's, how could Stoner have any interest in either? In the case of Mau v. Forgeon, the plaintiff made substantially the same allegations as to the construction and ownership of the ditch and the continuous use of the water. Forgeon an-

swered denying these allegations but set up nc claim either to the ditch or the water. The jury found generally for the plaintiff upon all the issues in both cases. Hence, the jury found that all the allegations of the plaintiff's petitions were true and all the allegations of the answers were false. If a general verdict means anything, these verdicts mean that the ditch is Mau's and not Stoner's nor Forgeon's, and an inspection of the testimony shows. a tremendous preponderance in favor of the plaintiff's contention that the ditch has never carried any more water than Mau is entitled to, to-wit, five cubic feet per second, equal to the irrigation of 320 acres.

The court emphasizes that portion of the judgments which restrains the defendant from further aggressions against the plaintiff, but overlooks apparently that portion which adopts the verdicts of the jury. The injunctive portions of the judgment are wholly immaterial. The question is, what did the jury find? The injunction is a mere incident to the judgment. It might well have been dispensed with in this case. Suppose there was no injunction, but simply judgment on the verdict. What, then, would be the plaintiff's situation? Looking to the issues in the two cases and the verdicts, he would stand the undisputed owner of the ditch and all the water therein, and if such owner, who could be a joint owner with him, and if there is no joint ownership, the court commissioner's finding that there was joint ownership, when there was none, fails to confer jurisdiction, and all his orders are void.

It will not be denied that if Judge Craig had been on the bench at Evanston when the suit was brought for the appointment of a distributer, he would have been disqualified by the filing of the statutory affidavit as to bias and prejudice and would have transferred the cause. While the Legislature may have failed to provide for a change of court commissioner in such a case, can it be that a judge can sit in his own cause, or that of his client, or when he is biased and prejudiced? It belongs to the power which created

such a court to provide another to which the case may be transferred; and, whether such another is established or not, the disqualified judge is not entrusted with authority to determine his own rights or wrongs (or those of his client.) (Cooley Const. Lim. (3d Ed.), 410-412, citing Wash. Ins. Co. v. Price, Hopk., Ch. 2; Hall v. Thayer, 105 Mass., 221; People v. Gies, 25 Mich., 83; R. Co. v. Howard, 20 Mich., 26.)

If an attorney sits in a case where he has been of counsel, the judgment is void. (Reams v. Kearns, 5 Cold., 217; Tootle v. Berkely, 56 Pac., 755.)

If the court by its own intuition or recollection discovers disqualification, it does not wait for the disqualification to be suggested by counsel, but withdraws from the bench. (Oakley v. Aspinwall, 3 Comst. N. Y., 547; Ins. Co. v. Price, 1 Hopkins, Ch. 1; Freeman on Judgments, Sec. 145; Barrett v. Gaines, 6 Tex., 435; Cooley's Const. Lim. (4th Ed.), note 1, 517; Adams v. Minor, 53 Pac., 815; Meyer v. San Diego, 53 Pac., 434; Moses v. Julian, 45 N. H., 52; 84 A. D., 114.)

In Michigan, where there are Circuit Court Commissioners, it is held that a court commissioner cannot act when his law partner is interested in the case. (Brown v. Byrne, Walker, Ch. 453; Heyn v. Farrar, 36 Mich., 258.)

If the order adjudging Mau guilty of contempt is void, no judge can validate it. It has been doubted whether a court commissioner can be invested with the power to punish for contempt, but conceding that the Legislature may confer such power, the statute must be strictly construed and the court commissioner cannot go beyond the strict letter of the law, and if he does his judgments are void. (6 Ency L. (2d Ed.), 1059, and cases cited.)

A court commissioner is a court of inferior and limited jurisdiction. He has no power to punish for contempt, except as conferred by statute, and this power cannot be extended in any degree beyond the terms of the statute. (7 Ency. L. (2d Ed.), 31; People v. Carrington, 5 Utah, 531; 17 Pac., 735.)

I regard the statute as good if designed to provide for the distribution of water temporarily where there is no dispute about title either in the ditch or the water. Otherwise I think it unconstitutional. (Salt Creek Valley Co. v. Parks, *supra;* Van Horn v. Dorrance, 3 Dall., 304.)

Potter, Justice.

The relator alleges in his petition that B. M. Ausherman, District Court Commissioner of the District Court for Uinta County, in disregard of his authority and jurisdiction in the premises, has proceeded unlawfully to try and determine certain claims to the use of water flowing through a certain ditch, and has appointed one H. J. Somsen as a distributer of water flowing in said ditch, under the provisions of Sections 908-914, inclusive, of the Revised Statutes, and that said commissioner will proceed further under said order unless prohibited by the order of this court to the damage of the relator; and this court is asked to issue a writ of prohibition restraining any further proceedings in such matter.

A rule to show cause was issued directed to said commissioner, the said Somsen, and the parties upon whose application a distributer of water was appointed. On behalf of said commissioner a demurrer is interposed to the petition on the grounds that this court is without jurisdiction to issue the writ as prayed for; and that the facts set forth in the petition do not show any right or cause for the writ.

John W. Stoner, Victor Forgeon, Aaron Stoner, Cyrus Wheeland and Charles Deloney, as plaintiffs, filed their petition in the District Court of Uinta County against Frank A. Mau, as defendant, and alleged that plaintiffs and defendant were joint owners in a certain described irrigating ditch in said county, which had been for many years and was then used by said parties—plaintiffs and defendant— for the irrigation of their respective lands lying under the ditch; and that said parties were unable to agree relative to the division and distribution of the water received through

said ditch. The prayer of the petition was for an order appointing some suitable person to take charge of the ditch, for the purpose of making a just distribution of the water received through the same to the several owners and parties entitled to the use of such water. The petition was filed May 13, 1902. Thereupon a summons was issued directed to the sheriff, commanding that officer to notify the defendant, Frank A. Mau, that he had been sued in said District Court by the above named plaintiffs, and requiring him to appear and answer the petition on or before five days "after the date of the return hereof, to-wit, on the 19th day of May, A. D. 1902."

On May 19, 1902, said Mau, who is the relator herein, and was the defendant in said suit, appeared by his attorney and filed a demurrer therein on the ground that the petition does not state facts sufficient to constitute a cause of action, and on the further ground that the court has no jurisdiction in the premises, the subject matter being *res adjudicata* by said court. On the same day said relator also filed a motion in said action, stating that he appeared specially for that purpose, to strike the petition from the files and dismiss the action on the ground that the court is without jurisdiction of the defendant or over the property as appears on the face of the record, and by the record of said court in certain cases of Frank A. Mau v. John W. Stoner and Frank A. Mau v. Victor Forgeon, because the issue is *res adjudicata* by said court.

The petition for prohibition in this court alleges that thereupon, on the following day, to-wit, May 20, 1902, relator's attorney ascertained that it was intended that said cause should be tried before said District Court Commissioner; and relator filed a motion and affidavit for change of court commissioner. The grounds of the motion were the alleged bias and prejudice of the commissioner and the alleged disqualification of that officer in consequence of his having been the attorney for John W. Stoner, one of the plaintiffs, in the suit of Frank A. Mau v. John W. Stoner,

wherein, it was alleged by the motion, it had been decided that said Stoner had no interest in the ditch in question. That motion was denied. Thereupon the motion to dismiss was presented and argued, and it was also denied. The demurrer was then presented and argued, and was overruled. The relator excepted to each of said rulings of the commissioner.

It is alleged in the petition filed in this court that the said commissioner then granted relator leave to file his answer forthwith, meaning on or before three o'clock of the same day, but twelve minutes remaining before the arrival of that hour. Counsel for relator, as alleged, requested that at least one hour be allowed him to prepare the answer, but that the commissioner at the hour of three o'clock proceeded to hear and determine the cause, before the relator had time to file his answer. It is also alleged that the commissioner refused to order the testimony to be taken by a stenographer, although relator tendered the fees therefor. It is alleged that at 5:30 o'clock in the afternoon of said day the relator filed an answer in the cause reserving his exceptions to the jurisdiction, and denying the allegations of the petition. The answer so filed also set forth the proceedings and judgments in certain causes theretofore tried in said court, wherein Frank A. Mau was plaintiff and John W. Stoner and Victor Forgeon respectively were defendants, and alleged that in said suits the right and title to the ditch and water rights in question was determined and adjudicated; and that it was therein determined that said Stoner and Forgeon respectively had no interest in the ditch, and that the same was the property of the relator. The pleadings in those actions, as well as the judgment entries, are set out in full.

The commissioner, it is alleged, filed with the clerk of court May 21, 1902, his order made the preceding day. The order recited the failure of relator to file an answer on leave granted for that purpose, the hearing of the cause on the petition and evidence of witnesses and examination of the

records of the court; and that it appeared to the satisfaction of the commissioner that the protection of the rights of the applicants to the use of water in said ditch required the issuance of the order prayed for; and that the allegations of the petition were found to be true.  It ordered that said H. J. Somsen, a suitable person, not having a personal interest in the ditch, be appointed to divide and distribute the water received through the same in accordance with the rights of the several owners.  He was ordered to distribute to the defendant therein, the relator here, the first five cubic feet of water, according to his right as determined by the court in the cases above mentioned, as having been determined in said court.

On May 26, 1902, the relator filed his exceptions to the orders of the commissioner and his objections to the confirmation or approval thereof.  Such exceptions were in substance the same as the objections included in the various motions and pleadings previously filed by the relator, except that it was now objected that the answer day did not occur until May 24, 1902, and that the defendant could not have been lawfully required to answer before that day; and that the case was not triable earlier than said answer day.

A motion was also filed by the relator that the court dismiss the cause on the ground of want of jurisdiction.  The ground was specifically stated in the motion to be that the title to the ditch is in dispute, and that the statute has no application where either the joint ownership or the extent thereof is in issue; and that the defendant in the action had denied the allegation of joint ownership under oath.  A motion upon the same grounds was also filed for judgment on the pleadings.  Thereupon said District Judge referred the matter to Hon. Richard H. Scott, the Judge of the First Judicial District.  There seems to have been no direct action or ruling of the court approving or disapproving said orders of the commissioner, or determining the exceptions or motion of the relator filed subsequent to the hearing before the commissioner; nor, indeed, does it ap-

pear from the petition here that said motions or exceptions.
have been presented to the court for consideration since
the matters were referred to the Judge of the First District
as aforesaid.

But it does appear that on the application and affidavit
of the person appointed to distribute the water of the ditch
showing that the relator had interfered and was interfering
with such distributer in the discharge of his duties, the said
relator was ordered by the commissioner to be brought be-
fore him to show cause why he should not be punished for
contempt of court.   Such proceedings were had therein
that the relator was by the commissioner adjudged to be in
contempt and fined in the sum of twenty-five dollars and
costs, but execution of the sentence was ordered suspended
until the proceedings therein could be submitted to the
proper judge for confirmation, or until the further order of
the court.   The relator excepted.   The contempt proceed-
ings were thereafter submitted to Judge Scott, and he en-
tered an order approving in all things the proceedings of
the commissioner, and his findings in the premises; and also
independently finding from the evidence that said relator
had wilfully, intentionally and contumaciously interfered
with an officer of the court, viz: the said Somsen, who, as
the order recites, had been duly appointed by the court to
divide and distribute the waters flowing through the ditch
in question; and the said judge by said order adjudged
that the relator pay a fine of twenty-five dollars and costs,
and that execution issue therefor.

The petition here alleges that under the order appointing
the distributer of water, and under the statute providing
for such appointment he will be and is required to report
monthly, or oftener, a statement of his expenses incurred
in the discharge of his duties, whereupon judgment will be
rendered against relator for such expenses, and such ex-
pense may become a lien upon the canal and water right of
the relator to his great and irreparable injury unless further
proceedings in said cause be restrained.   It is also alleged

that, unless restrained by the writ of prohibition the judgment of the court in the contempt proceedings will be executed.

The demurrer to the petition first challenges the jurisdiction of this court to grant the writ of prohibition as an original process. It is contended that the writ can only be issued in aid of the appellate jurisdiction of the court and in a cause pending in the court for review of a judgment or order; and that as the cause brought in the District Court is not here on appeal or error, the court is without jurisdiction to entertain the application for prohibition.

The constitution vests in the Supreme Court general appellate jurisdiction co-extensive with the State, in both civil and criminal causes, and a general superintending control over all inferior courts, under such rules as may be prescribed by law. (Const., Art. 5, Sec. 2.) It is also declared as follows: "The Supreme Court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The Supreme Court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and ohter writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction." (Art. 5, Sec. 3.)

It is argued that the jurisdiction of this court in all cases other than in quo warranto and mandamus as to state officers and in habeas corpus is revisory and appellate only; and that the power to issue the writ of prohibition is granted only as an aid to such jurisdiction.

It was intimated in the case of Dobson v. Westheimer, 5 Wyo., 34, that the grant of power to issue the writ contained in Section 3 of Article 5 of the constitution above quoted, was sufficient to authorize the issuance of the writ in an original proceeding brought in this court, although in that case the writ was denied. In the opinion in that case Chief Justice Groesbeck said: "One of the essential attributes of appellate jurisdiction, and one of the inherent powers of an appellate court, is the right to make use of all writs known

to the common law, and, if necessary, to invent new writs or proceedings in order to suitably exercise the jurisdiction conferred," citing Wheeler v. N. C. Irr. Co., 9 Colo., 249; Atty. Gen. v. R. R., 35 Wis., 425; Marbury v. Madison, 1 Cranch, 137, and that, "The constitutional grant construes itself and is broad enough to clothe this court with abundant authority in the exercise of its appellate and revisory powers without invoking the inherent powers of the court." In the opinion in that case no special reference was made to the provision of Section 2 granting to this court a general control over all inferior courts.

There are decisions that question the authority of a court vested with appellate jurisdiction only to issue the writ in a cause not before the court for review. But the jurisdiction of the Supreme Court in this State is not confined in all cases to strictly appellate proceedings. The power to exercise original jurisdiction in certain matters is expressly granted by the constitution; and the same instrument confers a general superintending control over all inferior courts.

It is, however, argued that the authority granted in Section 3 to issue the writ of prohibition is therein expressly limited to cases where the issuance of the writ may become necessary or proper for the exercise of the appellate and revisory jurisdiction of the court. We think it unnecessary to enter upon a consideration of the proper construction of that provision standing alone, or used in connection with any other grants of power than those contained in our constitution. Should it be conceded that 'the provision in Section 3 giving the court "also" the power to issue the certain writs therein specified was not inserted with reference to the general superintending control granted over all inferior courts by the preceding section, it would not follow that the power to issue the writs necessary for the purpose of exercising such superintending control did not exist. It was held in Colorado that the superintending control conferred upon the Supreme Court of that State in language similar to that employed in our constitution carried with it,

without any express provision on the subject, authority to issue all writs appropriately connected with the proper performance of the duties imposed. (Wheeler v. N. Colo. Irr. Co., 9 Colo., 248; 11 Pac., 103.)

In an able opinion discussing the effect of the constitutional grant of "a general superintending control over all inferior courts," the Supreme Court of Wisconsin said, in substance, that it endowed the court with a separate and independent jurisdiction, which enabled and required it in a proper case to control the course of ordinary litigation in such inferior courts, and also endowed it with all the common law writs applicable to that jurisdiction. And it was held that such writs were those employed by the English court of King's Bench in the exercise of its superintending jurisdiction over all inferior courts of the realm; the two writs by which that jurisdiction was principally exercised being the writs of mandamus and prohibition. (State ex rel. v. Johnson, 103 Wis., 591.) In an extensive note to the report of that case, in 51 L. R. A., commencing at page 33, the numerous authorities are collated, and the principles governing the question of jurisdiction to issue the writ are discussed. The doctrine of the authorities is there laid down to be that the inherent power of general superintendency that resided in the court of King's Bench in England has its seat in this country in the highest law court of original jurisdiction. Whether such inherent power resides in this court or not, it is unnecessary to determine, for the reason that the constitution expressly invests the court with such superintending control. And it seems to be well settled, or at least sustained by the great weight of authority, that under such a grant of power the court possessing it is authorized in appropriate cases to issue the writ of prohibition to restrain the action of an inferior court in excess of its jurisdiction. The Wisconsin court in the case above cited say: "It is very apparent that when the makers of the constitution used the words 'superintending control over all inferior courts' they definitely referred to that well known superintending

jurisdiction of the court of King's Bench. In England it was a branch of the King's power lodged with the King's court; in this country it is a branch of the sovereign power of the people, committed by them as a sacred charge to this court, not to be exercised upon light occasion, or when other and ordinary remedies are sufficient, but to be wisely used for the benefit of any citizen when an inferior court either refuses to act within its jurisdiction, or acts beyond its jurisdiction to the serious prejudice of the citizen."

We are of the opinion, therefore, that this court is vested with jurisdiction in proper cases calling for its exercise to issue writs of prohibition to restrain the action of inferior courts in excess of their jurisdiction. It is, however, contended that nothing remains to be done in the lower court that is properly subject to the writ of prohibition. It is insisted that the court has acted, and the issues attempted to be raised in this proceeding have passed to judgment in the lower tribunal. In the view we take of the case, it is unnecessary to decide whether the objection of counsel in that respect is well taken or not.

The chief ground upon which the jurisdiction of the District Court and that of the commissioner is assailed is that the statute under which the proceedings were instituted does not apply when the joint ownership of the ditch is denied, or the relative rights of the joint owners is in dispute. It is contended by counsel for relator that the court has jurisdiction of the statutory proceedings only when the parties are agreed as to the fact that the ditch is owned jointly by them, and as to their respective interests therein. The argument is, as we understand it, that in the summary proceeding provided for the court is without jurisdiction to hear and adjudicate upon conflicting claims of title to the ditch.

While we are inclined to agree with the argument stated broadly, we do not think the conclusion follows that, in case of a dispute as to the joint ownership, jurisdiction to entertain the statutory proceedings and enter the order

provided for ceases. To admit the correctness of the proposition would be to place it within the power of any person summoned in such proceedings by his own act to oust the court of jurisdiction.

The statute provides that, "Whenever two or more persons, joint owners in an irrigating ditch, their lessee or lessees, are unable to agree relative to the division or distribution of water received through such ditch, it shall be lawful for any such owner or owners, his or their lessee or lessees, or either of them, to apply to the District Court . . . . by a verified petition setting forth such fact, asking for an order appointing some suitable person to take charge of such ditch, for the purpose of making a just distribution of the water through the same, to the several owners or parties entitled to the use of the waters received through such ditch." (R. S., Sec. 908.)

The following section requires that the petition shall be filed with the clerk of the court, whereupon a summons is to be issued as in other cases notifying the owner or owners other than those filing the petition, and requiring them to appear within five days from the date of the issuance of the summons, and to answer the same; and the summons is required to be served at least two days before the date fixed therein for the answer. (Sec. 909.) The matter may be heard before the court, the District Judge in chambers, or the District Court Commissioner, and it is required to be heard on the day fixed for making answer, or as soon thereafter as possible; and the decision of the court, judge or commissioner is declared to be final. (Sec. 910.)

Section 911 provides that, "Upon it being made to appear to the satisfaction of the court, judge or commissioner that the protection of the rights to the use of the water in said ditch of the applicant or applicants requires the issuance of such order, he shall appoint some suitable person, not having a personal interest in such ditch, to divide and distribute the waters received through such

ditch, as in his judgment, justice may require, in accordance to the rights of the several owners, or their lessee or lessees. The person so appointed shall have exclusive control of such ditch for the purposes of dividing and distributing the water received into the same until such time as he may be removed by the order of the proper court, judge or commissioner."

In the three succeeding sections provision is made for the filing and approval of the accounts of the person so appointed covering his services and expenses, and for judgment by the court against any owner refusing to pay his share thereof, and constituting such accounts when filed in the manner designated by the statute a lien upon the interest in the ditch of the defaulting owner, and fixing the fees of the appointee, clerk, sheriff and commissioner.

An error or mistake in practice affords no ground for the issuance of the writ of prohibition, unless it involves the doing of something contrary to the law of the land. The object of the writ is the prevention of the exercise by an inferior court of a jurisdiction with which it has not been vested by law; and the writ issues in such case only when the party seeking it is without other adequate means of redress for the wrong about to be inflicted. It is granted to prevent action, and not to undo what has already been done. (State ex rel. v. District Court, 5 Wyo., 227.)

The demurrer questions the sufficiency of the petition as showing cause for the issuance of the writ. The primary inquiry, therefore, is whether the facts set out in the petition disclose a want of jurisdiction in the tribunal whose acts are complained of. The answer denying joint ownership was not filed in the proceedings below until after the hearing and presumably subsequent to the order made upon the hearing. It is true that a demurrer and motion were filed anterior to the hearing attacking the jurisdiction; but the objection stated in those papers was that the matter had already been litigated in another suit and adjudicated. They were not supported by affidavits, nor by

any other showing than a reference to the records of the court in the suits alluded to. It is not understood that former adjudication is a bar to jurisdiction. It may constitute a good defense to the proceeding upon some issue involved and control the decision of some question necessary to be determined. It is doubtful, therefore, if 'such pleadings adequately question the jurisdiction to entertain the proceedings. It is also to be seriously doubted whether the petition in this court embraces a direct denial of the existence of a joint ownership in the ditch, except by the incorporation therein of the answer filed below. But it is insisted that the pleadings and judgments in the former suits, all of which are embodied in the petition, show a previous determination adverse to the claim of joint ownership. While we may consider that matter, what has been said as to its effect in relation to the demurrer and motion to dismiss is equally applicable. If the court or commissioner had authority to enter upon a consideration of the question whether the parties were joint owners or not, the former adjudication, if any, might require a finding in accordance therewith, but it is not perceived that it would operate to defeat jurisdiction.

For the purposes of the question, we may treat the answer denying that the plaintiffs in the proceedings had a joint interest in the ditch as before the court at the hearing; or that the commissioner assumed to determine for the purposes of the case that they had such a joint interest. Had the commissioner authority to pass upon that question?

Independent of any alleged personal disqualification of the commissioner, in the event that the court had acquired jurisdiction, the commissioner was empowered to act. That officer for the time being had all the jurisdiction possessed by the court. We are led to inquire, therefore, into the facts essential to give the court jurisdiction of the subject matter of the proceedings. Stated generally, those facts are that two or more persons are joint owners of an irrigating ditch, and are unable to agree relative to the distribu-

tion or division of the water received through the same; and a verified petition setting forth such facts is filed by any such owner or owners asking for the appointment of some suitable person to take charge of the ditch and make a just distribution of the water to the parties entitled thereto.

Upon filing the petition alleging the existence of the jurisdictional facts, the court acquires jurisdiction as to subject matter; and upon obtaining jurisdiction of the parties by the statutory procedure it is authorized to proceed to some determination in the cause. It may be found necessary to dismiss the proceedings for want of jurisdiction subsequently appearing, but that matter must be determined by the court or magistrate. The fact that the defendant, by his answer, or any other pleading, denies that the parties are joint owners, or that the plaintiffs have no rights in the ditch, will not *ipso facto* operate to divest the court of jurisdiction. The statute is not entitled to the construction that jurisdiction vests in the court to entertain the proceedings and enter the order provided for only in case the facts of joint ownership and inability to agree as to the division of the water are admitted. It is clearly not so provided in terms, and such a construction would largely rob the statute of the very object of its enactment.

In State ex rel. v. Voorhies, Judge, &c, 34 La. Ann., 1142, the Supreme Court of Louisiana was asked to issue a writ of prohibition restraining a City Judge from proceeding in a certain cause. The suit before the inferior court was brought for the expulsion of a tenant, and the jurisdiction of the particular court was limited in such suits. Where the lease held by the tenant exceeded one hundred dollars the proceedings were required to be taken in a court of superior jurisdiction. The defendant in the suit answered, alleging that he held a lease, the yearly rent under which exceeded the said sum of one hundred dollars, and assailed the jurisdiction of the court. It was contended that on the mere allegation of the defendant the judge was bound

to dismiss the suit for want of jurisdiction. That view was not sustained. The court say: "It is an indisputable proposition that where a question of law can be determined only after a question of fact has been investigated and settled, the court which is called upon to solve the former must necessarily pass primarily on the latter." It was held that the judge was authorized to enquire into the correctness of the allegation of the defendant, and said: "The defendant must allege and prove and the court must decide, maintaining or declining jurisdiction, according to the proof administered." It was said, practically, that the proposition that the mere averment of a defendant would defeat jurisdiction is an absurdity.

In Dowdy v. Wamble, 110 Mo., 280, the court said: "Where enough facts are alleged to disclose that the case falls within a class of proceedings which the court is lawfully authorized to hear and decide, the question of the sufficiency of the showing made for the purpose of setting the court in motion is one of law for the determination of the court itself to which the showing is addressed, whatsoever its rank."

The court say in the case of In re Grove Street, 61 Cal., 438: "An inferior board may determine conclusively its own jurisdiction or power by adjudicating the existence of facts, upon the existence of which its jurisdiction depends." (See also Colo. F. & I. Co. v. Ry. Co., 66 Pac., 902; King v. Poole, 36 Barb., 242; Gormly v. McIntosh, 22 Barb., 271; Evansville, &c, R. R. Co. v. City, 15 Ind., 395; Caton v. Carter, 9 Gill & J., 476; Silver v. County, &c, 32 Pa. St., 356.; 12 Ency. Pl. & Pr., 180-181.)

If the existence of the jurisdictional facts are denied it becomes the province and duty of the court to determine whether such facts exist or not, and to act accordingly.

The statutory proceeding in question is not only summary, but the relief it affords is to all intents and purposes temporary. Upon the removal of the person appointed to divide the water, that particular proceeding comes to an

end. The order authorized to be made is one appointing some suitable person to distribute the water, and to that end to assume control of the ditch. While the court in that proceeding must consider and determine as a basis for the order whether the parties before it are joint owners of the ditch, and that the protection of the rights of the applicant requires the issuance of the order applied for, it is necessarily evident, we think, that such determination will not amount to a permanent adjudication and judicial settlement of the respective titles and interests of the parties in the ditch. The proceeding is not instituted under the general jurisdiction of the court. It is not a suit to quiet title, or for the redress of injuries. The issue in the case is the existence of a temporary necessity for a distribution of the water; and the proceeding is manifestly authorized for the purpose of avoiding unseemly conflicts between parties claiming joint interests in the same ditch, without compelling them to resort in the first instance to tedious and expensive litigation in the pursuit of the ordinary legal or equitable remedies to enforce their rights.

The determination of joint ownership, therefore, is nothing more than the determination of the existence of a fact necessary to jurisdiction. We apprehend that it would hardly be contended that the determination so made in such a proceeding would be conclusive in a subsequent suit invoking the general jurisdiction of the court to try, determine and finally adjudicate the title of the various alleged owners of the ditch. The power of the court in the special proceeding is limited to the entering of a particular order, if the facts authorizing it are made to appear.

The evidence upon which the commissioner acted is not before us. His decision upon the evidence, moreover, could not be reviewed by this court in a proceeding of this character. We have examined with some care the pleadings and judgments in the former suits, wherein it is claimed to have been decided that relator was the exclusive owner of the ditch. They do not establish such claim. Those suits were

brought for the recovery of damages for the diversion of certain water and for an injunction to restrain further diversions of that water. It may be assumed that the water had been diverted from the same ditch involved in the present controversy. The judgment rendered upon the verdict of a jury awarded the relator damages and an injunction. The latter restrained further interference not with the ditch, but with a certain amount of water flowing therein. There is nothing to show that the title of the respective parties to the canal was decided or involved as an issue in those actions. If, as a matter of fact, either of the defendants in those suits had a right to use the ditch for carrying water appropriated by them over and above the first five cubic feet flowing therein, it is clear that the judgment does not prevent such use of the ditch. It was frequently stated in argument that Stoner and Forgeon were, by the judgments of the court in the cases referred to, enjoined from using or interfering with the ditch. We cannot so understand the judgments. Using one judgment as an illustration: The defendant is restrained from "taking or diverting any of the water of the plaintiff flowing in the canal as described in plaintiff's petition, to-wit, the Mau Canal and the first five feet of water flowing therein." Mention of the canal by name was clearly for the purpose of designating the particular canal through which the water appropriation of the plaintiff was carried, and the injunction restrained any interference with or diversion of that water. The court was even more specific and designated the water to which the injunction applied as the first *five feet* flowing in the ditch, which left the matter of any other water conveyed through the ditch untouched by the judgment.

It is contended that the filing of the affidavit for change of commissioner divested the respondent Ausherman of any further jurisdiction to hear and determine the cause. The affidavit alleged bias and prejudice of said commissioner, and also interest in the cause; but it is evident that the allegation of interest was based upon certain facts supposed

to render him disqualified. We will consider that question later on. The statute seems to make no provision for change of commissioner. Any commissioner of the court, at least in the absence of the judge, might have taken cognizance of the matter; but we are unaware of any statute requiring one commissioner to transfer the cause to another upon the filing of such an affidavit as was filed in these proceedings. The proceedings were in court. They were entitled to be heard before a District Court Commissioner by reason of an express provision of the statute. We have a statute providing for change of venue in certain cases, and when the objection is to the judge, the latter is required to call in the judge of some other district to try the cause; but it is not perceived that those provisions are applicable to the hearing of a matter by the court commissioner.

If the commissioner is disqualified for any reason, objection to his acting may, of course, be presented; and he may no doubt be prevented, upon a proper showing in a superior tribunal, from assuming jurisdiction in the cause.

It is, moreover, contended that the respondent commissioner was disqualified on the ground that he had been attorney for one of the plaintiffs, John W. Stoner, in one of the cases already mentioned previously determined in the court; and it was alleged and is here insisted that the two actions involved practically the same issues, viz., the interest of the respective parties in and to the ditch.

Section 3339, Revised Statutes, provides that a District Court Commissioner shall not be authorized to act as such officer in any action, case or proceeding in which, or as to the subject whereof, he shall have been engaged, employed or retained as an attorney, or in reference to which and the subject whereof he shall have given any advice. In the record it is disclosed that the commissioner caused to be entered the following statement: "The court commissioner states that he has acted as attorney for John W. Stoner in the case of Mau v. Stoner, that was tried at the

last term of the District Court, and denies that he has given advice or acted in the capacity of attorney in the case wherein the joint owners of Mau-Stoner ditch have petitioned for the appointment of a distributer, and denies that he has acted in any way as attorney for Mr. Stoner, or any other party, in the proceedings in which a water distributer was appointed, or in the case at bar."

Now, there is nothing in the record of the case of Mau v. Stoner set out in the petition for prohibition to indicate that the commissioner has been engaged, employed or retained as an attorney, or given any advice in reference to the proceeding for the appointment of a distributer of water conveyed through the alleged joint ditch which was heard and determined by him, or in reference to the subject matter thereof. There are no independent specific allegations in the petition to the effect that said commissioner has acted in disregard of the provisions of Section 3339, or that he was in fact disqualified on account of his employment as attorney in the proceeding, or having given advice in reference to its subject matter. The whole of the allegation on the subject of the commissioner's disqualification rests upon his relation as attorney in the suit of Mau v. Stoner aforesaid, the pleadings and judgment in which action are set out in the petition filed in this court.

We are not satisfied that such a showing is made by the petition on this ground as against the demurrer which requires this court to resort to the writ of prohibition to restrain further action of the commissioner. We are the more inclined to that conclusion, in view of the present situation of the case in the court below, and the nature of the proceedings. The whole matter can be brought to the attention of the proper District Judge, and an application made for the removal of the distributer appointed by the commissioner. The proceedings having passed to final order, so far as the commissioner is concerned, practically nothing remains to be done in court but the approval of the accounts of the person appointed to distribute the wa-

ter.   Moreover, other remedies are probably available to
the relator which it is unnecessary to mention.   At any
rate, we are inclined to regard the rather vague showing
of the petition in respect to the alleged disqualification of
the commissioner as insufficient to warrant the issuance of
the writ on that ground.

The refusal of the commissioner to have the testimony
taken by a stenographer and to allow further time for filing
answer do not present jurisdictional questions; and we are
inclined to regard the objection that the cause was pre-
maturely heard in the same light.   But it is doubtful, to
say the least, whether that point is well taken.   Under the
statute, the summons should require the defendants to ap-
pear within five days after the issuance thereof.   It was
issued May 13, 1902, and is to be construed, we think, as
requiring appearance May 19.   It is true that, through a
probable inadvertence, it required the defendant to appear
"on or before five days after the date of the return hereof,"
and the return day was fixed for May 19.   But following
the language above quoted appeared these words: "to-wit,
on the 19th day of May, A. D. 1902."   The parties evi-
dently construed the summons, at the time, as requiring
appearance May 19; and the defendant did appear at that
time, and then filed his demurrer and motion to dismiss.

The objections to the proceedings subsequent to the ap-
pointment of a distributer of the water are based upon the
supposed want of jurisdiction to make the appointment.
So far as the contempt proceeding is concerned, if any or-
der therein is to be executed, it will evidently be the order
made by the judge, rather than the one made by the commis-
sioner.   In addition to approving the order of the commis-
sioner, the judge, by an independent judgment, found the
relator guilty of contempt and imposed sentence upon him.
No other objection to that judgment is urged than that he
was adjudged guilty of interfering with an officer of the
court whose appointment was illegal and void.

We are constrained to hold that the petition fails to

make a showing sufficient to warrant the issuance of the writ, and that the demurrer should, therefore, be sustained.

The temporary prohibition under the rule to show cause is vacated and the petition dismissed.

CORN, C. J., and KNIGHT, J., concur.

### ON PETITION FOR REHEARING.

POTTER, JUSTICE.

The relator has filed a petition for rehearing in this cause. No new point is suggested, but the brief on rehearing is practically a reargument of the propositions made by counsel for relator on the original hearing. We deem it unnecessary to again enter upon a discussion of these questions. Such re-examination as has been deemed necessary has but served to confirm in our minds the correctness of the conclusion heretofore reached. A rehearing will be denied.

*Rehearing denied.*

CORN, C. J., and KNIGHT, J., concur.