607 P.2d 1259 (1980)
STATE of Wyoming ex rel. Peter J. FEENEY, Commissioner of the County Court of Natrona County, Wyoming, Petitioner,
v.
DISTRICT COURT OF the SEVENTH JUDICIAL DISTRICT and Judge Dan Spangler, Judge of The District Court, Seventh Judicial District, Natrona County, Wyoming; The Attorney General for the State of Wyoming; the County and Prosecuting Attorney for Natrona County, Wyoming; Harriscope Broadcasting Corporation, d/b/a KTWO Radio and Television; Stephen E. Little; and Mike Howell, Respondents.
The STATE of Wyoming, upon the relation of Mike HOWELL, Petitioner,
v.
The SEVENTH JUDICIAL DISTRICT OF NATRONA COUNTY, Wyoming, Dan Spangler, Judge thereof, Respondent.
Peter J. FEENEY, Commissioner of the County Court of Natrona County, Wyoming, Appellant (Respondent below),
v.
STATE of Wyoming ex rel. HARRISCOPE BROADCASTING CORPORATION, d/b/a KTWO Radio and Television, Appellee (Petitioner below).
The Attorney General for the State of Wyoming; the County and Prosecuting Attorney for Natrona County, Wyoming; Stephen E. Little; and Mike Howell, Appellees (other Respondents below).
Nos. 5232, 5241 and 5245.
Supreme Court of Wyoming.
March 13, 1980.
*1260 Barry G. Williams, Richard L. Williams, and Houston G. Williams, of Williams, Porter, Day & Neville, P.C., Casper, for Peter J. Feeney.
Dan Spangler, Judge of the District Court, represented himself.
John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Richard Scott Rideout, Asst. Atty. Gen., Cheyenne, for the Attorney General, for the State of Wyoming.
Burton W. Guetz, County Atty., and Michael J. Burke, Deputy County Atty., Casper, for the County and Prosecuting Attorney of Natrona County.
Claude W. Martin, of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for Harriscope Broadcasting Corp.
Michael H. Schilling, Appellate Counsel, Wyoming Public Defender, Cheyenne, and Harry G. Bondi, Deputy Public Defender, Casper, for Stephen E. Little.
King Tristani, Asst. Public Defender, Cheyenne, for Mike Howell.
Before RAPER, C.J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.
ROSE, Justice.
We are concerned with two petitions for writs of prohibition. In one, Defendant Howell asks this court to enter its order prohibiting enforcement of a district court order[1] which directs his preliminary hearing, and that of Stephen E. Little, to be open to the public. The Petition for a Writ of Mandamus was granted by District *1261 Judge Spangler on the petition of Harriscope Broadcasting Corporation, a radio and television company with stations at Casper, Wyoming. The writ of mandamus nullifies an order of Court Commissioner Feeney closing the preliminary hearings of the aforesaid defendants, who are charged with first-degree murder. The second petition for a writ of prohibition is filed by Court Commissioner Feeney, who seeks the same relief as Howell.
In his decision letter, Commissioner Feeney said:
"It is clear to me that at the preliminary hearing level there are many dangers that would arise that may seriously affect the defendants' right to an impartial jury. It is noted that the hearing of November 7, 1979, was conducted by written Motions, oral arguments of counsel and inquiry from the Bench and did not include the introduction of evidence or testimony. Therefore, the record of the hearing and court file as it stands form the basis for the facts and conclusions of this decision.
"The Court file shows an Affidavit of a member of the Casper Police Department. This Affidavit and the information contained is to a very large extent, hearsay. The Affidavit, paragraphs 7 and 8 make reference to inculpatory and possibly exculpatory statements of the defendants and each of them. Inasmuch as the County Court has no jurisdiction to determine constitutionality in suppression hearings, many of these statements or portions of same, may well be inadmissable [sic] at a trial on the main issue. Because the Wyoming Rules of Evidence do not apply at the preliminary hearing level (and because the County Attorney refused the suggestion of the Court sua sponte to apply said Rules), the Court cannot exclude these statements at the preliminary hearing. These statements, if disseminated may well constitute prejudicial pretrial publicity making it difficult or perhaps impossible to empanel an impartial jury in the Natrona County District Court.
"The obvious danger is potentially making this case reversable [sic] on appeal if subsequent suppression motions would exclude the statements after they have in fact been widely disseminated. The defendants at that point have the difficult (and almost impossible) burden of showing the effects and degree of prejudice on the fairness of the trial. I find, therefore, that the dissemination of information from the preliminary hearing and its record would create a clear and present danger to the fairness of the trial.
"I strongly believe that if the hearing were open, the only effective method of preventing dissemination of hearsay of evidence subject to suppression or admissability [sic] would be to order its publication ceased. This surely would be a previous restraint on the media's First Amendment rights. I do not consider that alternative reasonable or desirable. I am well aware of Chief Justice Raper's dissent in Williams [Williams v. Stafford, 589 P.2d 322 (Wyo. 1979)] however, in light of the majority in Gannett. [sic] [Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)]. The County Attorney who resisted defendant's [sic] Motions, have [sic] not offered any reasonable alternatives available to the Court sua spante [sic] to prevent dissemination of damaging testimony otherwise inadmissable [sic] under the Wyoming Rules of Evidence. I find therefore, the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means. It is hereby ordered that the record and copies of this proceeding and the subsequent preliminary hearing, together with this letter and the Court's file be sealed by the Clerk of the Court and shall only be opened upon my order or following the completion of the trial or earlier if consistent with trial fairness.
"This decision is based solely upon my concern for the pretection [sic] of the defendants' rights in the County Court."
The District Court Judge said in his decision letter, upon which he predicated the writ of mandamus:

*1262 "In Williams v. Stafford, [Wyo., 589 P.2d 322 (1979)] The Wyoming Supreme Court set standards for the guidance of our Courts. The Supreme Court stated that access to court proceedings should be limited only in exceptional circumstances ...
"The Standard further provides that the hearing may be closed only if the dissemination of information from the pretrial proceeding would create a clear and present danger to the fairness of the trial and the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means. The record here is lacking in evidence that the dissemination of information from the pretrial proceeding would create a clear and present danger to fairness of the trial. There is nothing in the record to show the `exceptional circumstances' required... ."
We will hold that the dissemination of some documentary evidence of record in the case, and probable testimony pertaining thereto, presented a threat to the defendants' right to a fair trial sufficient to confer upon Commissioner Feeney discretion to consider closing the pretrial hearing.[2] As we discuss below, since mandamus is not available to control the exercise of discretion of an inferior tribunal, we will conclude that the district court improperly utilized the mandamus remedy to interfere with Commissioner Feeney's duties
The two prohibition cases filed here by Feeny and Howell were consolidated by order of this court. An order has also been entered directing that all proceedings be stayed below until the issues raised by the petitions for writs of prohibition have been resolved.
The issues in the consolidated cases are:
(1) Whether the district court has subject-matter jurisdiction to issue the writ or  whether the district court exceeded its jurisdiction when it so acted; and
(2) Whether Harriscope has standing to bring the mandamus action.[3]
This court ordered the briefing of two other issues:
(1) Whether Commissioner Feeney has standing to initiate in this court an original proceeding in prohibition; and
(2) Whether the decision of the district court should have been brought here by direct appeal rather than a petition for a writ of prohibition.

Subject-Matter Jurisdiction and Closure Requirements

The Nature of Mandamus
Question: Under the circumstances of this case, does the district court have subject-matter *1263 jurisdiction and/or did it exceed its jurisdiction when it directed Court Commissioner Feeney to open to the public the preliminary hearings in the Howell and Little murder cases? Ancillary to this query is an identification of constitutional rights and interests of those concerned, as well as a response to the issue of whether or not Commissioner Feeney had discretion  under the particular facts of this case  to consider closing the hearing.
In aid of this inquiry, we must explore the offices of the writ of mandamus. Section 1-30-102, W.S. 1977, provides:
"The writ [mandamus] can only be issued by the supreme court or the district court. It may require an inferior tribunal to exercise its judgment or to proceed to discharge any of its functions but it cannot control judicial discretion." (Bracketed matter and emphasis supplied.)
In Williams v. Stafford, Wyo., 589 P.2d 322, 324 (1979), we said:[4]
"Writs of Mandamus, on the other hand, may direct an inferior tribunal to exercise its judgment but it may not control judicial discretion. Section 1-30-102, W.S. 1977. The function of mandamus is to command the performance of a ministerial duty which is plainly defined and required by law. Section 1-30-101, W.S. 1977; and Lebeau v. State ex rel. White, Wyo., 377 P.2d 302, 303 (1963). See, Philadelphia Newspapers, Inc. v. Jerome, 478 Pa. 484, 387 A.2d 425, 429, fn. 11 (1978), U.S. appeal pending 434 U.S. 241, 98 S.Ct. 546, 54 L.Ed.2d 506... ." (Emphasis supplied.)
In State, ex rel. Marsh v. State Board of Land Commissioners, 7 Wyo. 478, 53 P. 292 (1898), we refused the mandamus vehicle to force the State Board of Land Commissioners to honor the petitioner's request to have a lease cancelled and reissued to him. In holding that mandamus would not lie, we cited an earlier case for the following proposition:
"... `A subordinate body can be directed to act, but not how to act in a matter as to which it has the right to exercise its judgment; and where it is *1264 vested with power to determine a question of fact the duty is judicial, and, however erroneous its decisions may be, it cannot be compelled by mandamus to alter its determination;'... ." 53 P. at 295.
This court has, therefore, recognized that a proper function of the writ of mandamus is to compel a lower court or subordinate administrative tribunal to perform such ministerial functions as it is required by law to do, but the writ cannot be employed to review a decision where the exercise of judicial or administrative discretion is involved.

The Nature of a Closure Decision
The next question is: What kind of a decision was Commissioner Feeney obliged to make when he ruled on the closure motion? Was it the kind of decision in which statutory and/or case law dictated the outcome and with respect to which he had no options?  or  did he have some judicial discretion to exercise? If the Commissioner's obligation falls within the latter category  a higher court cannot utilize mandamus to furnish the answer to the question which the Commissioner contemplated and must  by employing his judicial discretion  decide. If it falls within the former category, then mandamus is proper. § 1-30-102, supra; Williams, supra; and Marsh, supra.
We spoke of the nature of closure decision-making in Williams, supra. There we said:
"... When ... there is a challenge to the court's order by a representative of the public, then, subject to appellate review, the district court, if the proceeding had been held in a minor court, or this court, if the proceeding had been originally heard in the district court, must determine whether the originating court had abused its discretion ... .
"The resolving of this issue, when the defendant has yet to proceed to trial, involves the delicate balancing of the public's right of access to information, on the one hand, and the defendant's right to a fair trial on the other." (Emphasis supplied) 589 P.2d at 327.
We could not have given a more definitive answer to the question of whether or not closure involves the utilization of judicial discretion. It does!!!
In Williams, supra, we adopted standards to which the justice of the peace (court commissioner in this case) is required to conform in a closure case. We said, in adopting the American Bar Association Standards:
"`Except as provided below, pretrial proceedings and their record shall be open to the public, including representatives of the news media. If at the pretrial proceeding testimony or evidence is adduced that is likely to threaten the fairness of a trial, the presiding officer shall advise those present of the danger and shall seek the voluntary cooperation of the news media in delaying dissemination of potentially prejudicial information by means of public communication until the impaneling of the jury or until an earlier time consistent with the fair administration of justice. The presiding officer may close a preliminary hearing, bail hearing, or any other pretrial proceeding, including a motion to suppress, and may seal the record only if
"`(i) the dissemination of information from the pretrial proceeding and its record would create a clear and present danger to the fairness of the trial, and
"`(ii) the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means.
"`The defendant may move that all or part of the proceeding be closed to the public (including representatives of the news media), or, with the consent of the defendant, the presiding officer may take such action sua sponte or at the suggestion of the prosecution. Whenever under this rule all or part of any pretrial proceeding is held in chambers or otherwise closed to the public, a complete record shall be kept and made available to the public following the *1265 completion of trial or earlier if consistent with trial fairness.'"
"To this standard we would add several further requirements.
"The portion of the pretrial proceeding involved in the determination of closure shall, itself, be closed to the public. Otherwise, there would be no meaningful way of ascertaining whether or not the failure to close the pretrial proceeding would create a `clear and present danger to the fairness of the trial,' nor would there be an effective way of deciding whether or not there exists a reasonable alternative to closure. A record of this preliminary determination shall be kept, and the factual basis for the determination upon which closure is predicated shall be made apparent therein..." 589 P.2d at 326.
Even though decision-making on the issue of clear and present danger to defendants' fair-trial rights would appear to call for the commissioner to exercise judicial discretion in all cases, it conceivably could be argued that  in a mandamus matter such as that with which we are here concerned  the district court could entertain a petition for a writ of mandamus to examine the record of the in camera proceedings for the purpose of ascertaining whether or not there were sufficient facts of record upon which to exercise discretion. In other words, if, upon district court inquiry, the record revealed that neither the litigants nor the record demonstrated at the in camera pre-preliminary hearing, that there would be offered (at the preliminary hearing) matter which would
"`create a clear and present danger to the fairness of the trial, and ... [if] the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means.'" Williams, supra, at 589 P.2d 326,
then the district court, in a mandamus action, could, indeed, order the preliminary hearing opened to the public. Why? Because  there being no evidence of a fair-trial threat  the commissioner's duty to open the hearing according to the directives of Williams is relegated to a ministerial function which mandamus will, indeed, reach. § 1-30-102, supra; Williams, supra; and Marsh, supra.
But that is not the situation here. We have examined the record in this case with great care. We find, as a matter of law, that there was and is documentation in the record, alluded to in Commissioner Feeney's decision letter, supra, which, while acceptable under the liberal rules that pertain to a preliminary hearing, is such matter as may or may not be admissible at the trial upon the issue of guilt. It is also clear to this court that in the event the aforesaid evidence were to be made public at the preliminary hearing and then excluded at the trial, it would very likely threaten the fairness of defendants' trial.[5]
"... `[T]he dissemination of information from the pretrial proceeding and its record would create a clear and present danger to the fairness of the trial, ... .'" Williams, supra, at 589 P.2d 326.
Harriscope's Constitutional Rights and the Writ of Mandamus
Harriscope argues that this court is on infirm constitutional grounds when we say that a judicial officer has discretion to close a pretrial hearing if necessary to avoid a clear and present danger to the defendant's ability to obtain a fair trial. We do not agree and it is our opinion that we satisfactorily disposed of that contention in Williams, supra. However, since Williams was decided, the United States Supreme Court issued an opinion which has sparked considerable controversy. Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Since Harriscope asserts both federal and state constitutional rights, we will address Harriscope's constitutional arguments in light of Gannett, supra, and Williams, supra.
*1266 Harriscope based its application for a writ of mandamus on the following claims:
"(1) The order of Respondent closing the preliminary hearing constitutes unwarranted censorship of the press in violation of the First Amendment to the Constitution.
"(2) The order impairs the Petitioner's constitutionally guranteed [sic] rights to gather news and report the news.
"(3) The order abridges the public's right to know.
"(4) The order violates Section 8, Article 1 of the Wyoming Constitution which provides that `all courts shall be open.'
"(5) The order violates the Sixth Amendment and Fourteenth Amendment rights to a public trial.
"(6) The order exceeds the jurisdiction of Respondent's Court."[6]
The constitutional rights of those concerned are these:
First: Harriscope's right to be present at the pretrial hearings in question are the same as the public's, Williams, supra, and citations to this proposition therein contained.
Second: We are not confronted with a First Amendment freedom-of-speech right in this case. The Commissioner's closure order was not a prior restraint on freedom of speech, which is presumed unconstitutional. Williams, supra, at 589 P.2d 325. In the cases which we consider here, we are not concerned with information in the possession of the news media. The problem here has to do with information which has been restrained and which the media seeks to obtain  not information that it possesses. Williams, supra.
Third: Where the public's access to pretrial proceedings is restrained, as it would be were Commissioner Feeney's closure order given effect, the public (which we again emphasize includes the media) has no constitutional right under the First or Sixth Amendments to the United States Constitution or any corollary provisions of the Wyoming Constitution to have free access to such preliminary-hearing proceedings or to all information in the possession of the courts. Williams, supra, and citations therein contained. See, also, Gannett, supra. The majority in Gannett recognized  as we did in Williams, that the public has an "interest" in the Sixth Amendment guarantees for public trial, but this does not create a constitutional right on the part of the public.[7]
Fourth: The Sixth Amendment guarantee of right to a speedy and public trial[8] inures to the protection of the defendant.
"... [I]ts guarantee, like the others enumerated, is personal to the accused... ." Gannett, supra, at 99 S.Ct. 2905, citing Faretta v. California, 422 U.S. 806, 848, 95 S.Ct. 2525, 2547, 45 L.Ed.2d 562 (1975).
Fifth: While the public has an admitted interest in the administration of justice during the pretrial proceedings, that interest is protected by the participants to the litigation in our adversary system of criminal justice. Gannett, supra.
Sixth: We recognize, as does the United States Supreme Court, that adverse pretrial *1267 publicity can endanger the fair-trial rights of the defendant. Williams, supra. And, see Gannett, supra, citing Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). Cf. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).
Gannett holds that in order to
"safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity... ." (Citing Sheppard, supra)
The Gannett Court goes on to say:
"... And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary."
Seventh: The Sixth Amendment protections do not guarantee to the defendant the right to compel a private trial (Gannett, supra), and access to court proceedings should be limited only in exceptional circumstances (Williams, supra). The Sixth Amendment permits and even presumes open trials as a norm. Gannett, supra.
Accordingly, we reject Harriscope's claims that Commissioner Feeney could not constitutionally possess discretion to close the pretrial hearing in order to insure a fair trial.

The Mandamus Question Summarized
Summarizing the discussion of whether or not mandamus in the district court is the proper way to reach the issue of the propriety of pretrial closure, we summarize as follows:
Mandamus cannot be utilized to overrule an inferior judicial tribunal's decision where the decision calls for the exercise of judicial discretion. § 1-30-102, W.S. 1977, supra; Williams, supra; and Marsh, supra. Under the facts of this case, as revealed by the record, and particularly with respect to the officer's affidavit to which Commissioner Feeney draws attention in his decision letter, the Commissioner's discretion must necessarily come into play on the issues of whether or not an open or closed hearing will serve to protect the fair-trial constitutional rights of the defendants and whether the prejudicial effect of this information upon trial fairness can be avoided by any reasonable alternative means. In other words, by reason of this affidavit and the potential for its normal utilization in ordinary preliminary-hearing affairs, the Commissioner must call upon his discretion to decide whether or not its introduction and attendant usage would
"`create a clear and present danger to the fairness of the trial, and ... [if] the prejudicial effect of such information on the trial fairness cannot be avoided by any reasonable alternative means.'" Williams, supra, at 589 P.2d 326.
Since this is so, this discretion cannot be tested by mandamus unless the doctrine (Williams and Marsh, supra) and the statute (§ 1-30-102, W.S. 1977) must submit to overriding constitutional rights of strangers to the pretrial proceedings. As we have indicated above  the public at large has no such rights and, therefore, Harriscope, whose rights are no greater than any other member of the public (Williams, supra), may not, in this case, reach the decision of Commissioner Feeney with a district court writ of mandamus directed against his closure order  an order which was formulated through the proper employment of his judicial discretion.

Is Prohibition the Proper Vehicle to Obtain Review by This Court of the District Court's Action?
We conclude that the extraordinary writ of prohibition is the proper way to obtain review by this court of the district court's intervention in the pretrial hearing.
We said in Williams, supra:
"... The function of a writ of prohibition is to prevent action and not to undo that which has already been done... ." 589 P.2d at 324.
*1268 In the instant matter, Feeney asks us to prohibit the district court from interfering in his decision-making function. We think this a proper area in which prohibition should function. We also said in Williams, supra:
"... It is also important to note and emphasize that, other than in exceptional or extraordinary circumstances, the writ of prohibition is only available if the lower court does not have subject-matter jurisdiction or, having such jurisdiction, it exceeds the scope thereof. State ex rel. Weber v. Municipal Court of the Town of Jackson, Wyo., 567 P.2d 698, 699 (1977)." 589 P.2d at 324.
The writ of prohibition in this case meets the test since we have held that the issuance by the district court of its writ of mandamus against Commissioner Feeney was in excess of its subject-matter jurisdiction.

Standing of Commissioner Feeney and Defendant Howell
Standing has to do with whether or not the litigant has a legally recognizable interest which the law permits him to assert in the litigation in question. Under Williams, supra, and Gannett, supra, Howell, the defendant in the underlying criminal case, has standing to assert his interest in a closed preliminary hearing.
Commissioner Feeney alleges that a district court is unlawfully interfering with the performance of his lawful discretionary duties. He alleges that he is implicitly being threatened with contempt proceedings if he does not yield to the unlawful assertion of authority by the district court. Feeney has a recognizable interest in being able to properly conduct his office, Klose v. Superior Court, 96 Cal. App.2d 913, 217 P.2d 97 (1950); and, therefore, he has standing to bring his petition for a writ of prohibition in this court.
The petitions for writs of prohibition are granted, and Commissioner Feeney's closure order is reinstated.

CASE NO. 5245
By reason of our holding in Cases No. 5232 and No. 5241, the appeal in Case No. 5245 is moot and will be dismissed by separate order.
RAPER, Chief Justice, dissenting.
I dissent.
In Williams v. Stafford, Wyo. 1979, 589 P.2d 322, this court held that mandamus is the proper remedy to seek relief in cases of this nature and that applications should, after the date of that decision, be presented to the proper district court and "the function of a reviewing court in dissemination cases is to determine whether there has been an abuse of discretion," 589 P.2d at 327. (Emphasis in original.) That rule, however, now turns out to be unavailable because, when a court grants a motion to close court proceedings from the public and the media, it has acted within its powers of discretion and the petitioner for mandamus is pursuing a hopeless course  an exercise of futility  even though the standards laid down by this court have not been followed. I cannot agree that we are powerless to address this matter. To so conclude is to make a mockery of the standards we ourselves directed.
I iterate by reference my views expressed in detail in my dissent in Williams, 589 P.2d at 328-334. At this point I summarize from there what abuse of discretion means. Section 1-30-102, W.S. 1977, upon which the majority relies, restates the common law rule that a writ of mandamus may not control judicial discretion. However, it does not authorize abuse of discretion. A county court cannot act arbitrarily under the guise of discretion. When discretion is abused, mandamus may issue. "Abuse of discretion" is a legalistic phrase used to indicate that an appellate court is of the opinion that an error of law has been committed. It is an act of the inferior tribunal exercised to an end not justified by law, reason and evidence. In this case the county court commissioner did not follow the standards established by this court, and the majority does not seem to notice.
*1269 A remedy was held out and now it has been snatched away and the standards have been rendered a complete nullity in that no way remains to enforce them. Mandamus is designed to give a quick method of correcting an inferior court's errors of law where no other remedy is available:
"Mandamus is a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." Section 1-30-101, W.S. 1977.
"The writ must not be issued when there is an adequate remedy at law. It may issue on the information of the party beneficially interested." Section 1-30-104, W.S. 1977.
There is no remedy at law available. There is no provision for appeal from erroneous rulings of a county court at the preliminary hearing stage.
In an appeal, neither this court nor any other appellate court will disturb the truly discretionary acts of an inferior court. By "discretion" is meant an impartial discretion, guided and controlled in its exercise by fixed legal principles; it is a legal discretion to be exercised in a manner to subserve and not to defeat the end of substantial justice and, for a manifest abuse, it is reviewable by the appellate jurisdiction. Lake v. Lake, 1947, 63 Wyo. 375, 399, 182 P.2d 824. If a matter rests within properly exercised discretion of a court, this court will not interfere unless it affirmatively appears the decision of the court was without substantial evidence to support it or that it was an abuse of discretion. Redwine v. Fitzhugh, 1958, 78 Wyo. 407, 329 P.2d 257, 72 A.L.R.2d 664, reh. den. 78 Wyo. 426, 330 P.2d 112.
Mandamus is not designed to permit an avoidance of the requirements of the law and permit arbitrary and unreasonable action. It is fashioned to prevent such action.
In Williams, this court held that access to court proceedings should be limited only in exceptional circumstances and adopted the A.B.A. Standard 8-3.2, Fair Trial and Free Press, Standards Relating to the Administration of Criminal Justice, that a preliminary hearing may be closed only if:
"`(i) the dissemination of information from the pretrial proceeding and its record would create a clear and present danger to the fairness of the trial, and

"`(ii) the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means.'"
The alternative means appear in the commentary to the A.B.A. Standard are: (1) continuance, (2) severance, (3) change of venue, (4) change of venire, (5) intensive voir dire, (6) additional peremptory challenges, (7) sequestration of the jury, and (8) admonitory instructions to the jury.
In Williams v. Stafford, supra, the majority excused the Justice of the Peace because this court had, as yet, constructed no standards which could serve as the touchstones for identification of abuse of discretion. 589 P.2d at 327. Now there are standards, and they were in effect before this case arose in county court. If that court official failed to follow those standards, there was an abuse of discretion. District Judge Spangler meticulously followed the directions of this court and conducted his review within the scope outlined in Williams. He examined the record of proceedings in the county court and in his decision letter found:
"In Williams v. Stafford, the Wyoming Supreme Court set standards for the guidance of our Courts. The Supreme Court stated that access to court proceedings should be limited only in exceptional circumstances. The Court also found that the American Bar Association Standard is the most acceptable approach. That Standard indicates that if at the pretrial proceeding evidence is adduced that is likely to threaten the fairness of a trial, the presiding officer shall advise those present of the danger and shall seek the voluntary cooperation of the media in delaying dissemination of potentially prejudicial information until impaneling of the jury or an earlier time consistent with the administration of justice. *1270 There is no indication in the record of this case that this initial step was taken.
"The Standard further provides that the hearing may be closed only if the dissemination of information from the pretrial proceeding would create a clear and present danger to the fairness of the trial and the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means. The record here is lacking in evidence that the dissemination of information from the pretrial proceeding would create a clear and present danger to fairness of the trial. There is nothing in the record to show the `exceptional circumstances' required. As to this element, these cases appear no different from scores of others that pass through our Courts each year.
"There is also no evidence in the record to support a finding that the prejudicial effect of information from the pretrial proceeding on trial fairness cannot be avoided by any reasonable alternative means. For example, the alternative of sealing documentary exhibits was not considered."
The district judge thereupon concluded, and in an order following his decision held, that the county court commissioner had abused his discretion in closing the proceedings and granted the writ of mandamus. His action was in all respects consonant with the Williams decision.
There is a misconception evident in the majority opinion as to how an opinion of the Supreme Court of the United States is examined. The lead opinion of the Justice delivering "the opinion of the court" does not always express the majority opinion. In order to determine the holding of a majority of the court on a particular issue, it is necessary to study not only the "opinion of the court" but also the concurring and dissenting opinions as well. The holding may well be found in a combination of those opinions. Such is the case of Gannett Co., Inc. v. DePasquale, 1979, ___ U.S. ___, 99 S.Ct. 2898, 61 L.Ed.2d 608, which is cited frequently in support of the majority views. Most of what is said in the so-called "majority" opinion in Gannett is dictum.
For example, directly bearing on this case, the majority opinion in the cases before us states:
"* * * The majority in Gannett recognized  as we did in Williams, supra, that the public has an `interest' in the Sixth Amendment guarantees for public trial, but this does not create a constitutional right on the part of the public." (Footnote omitted.)
The decision letter of the county court commissioner also stated that, "Gannett holds that there is no constitutional public right to access." The majority holds that the right to a public trial is personal to the defendant. Neither the majority nor the commissioner is correct.
Justice Powell and the four dissenting (total of five) Justices in Gannett did not agree with that expression found in what is assumed to be the majority opinion but which is not. Justice Powell said in his concurrence:[1]
"* * * Because of the importance of the public's having accurate information concerning the operation of its criminal justice system, I would hold explicitly that petitioner's reporter had an interest protected by the First and Fourteenth Amendments in being present at the pretrial suppression hearing. As I have argued in Saxbe v. Washington Post Co., 417 U.S. 843, 850, 94 S.Ct. 2811, 2815, 41 L.Ed.2d 514 (1974) (POWELL, J., dissenting), this constitutional protection derives, not from any special status of members of the press as such, but rather because `[i]n seeking out the news the press ... acts as an agent of the public at large,' each individual member of which cannot obtain for himself `the *1271 information needed for the intelligent discharge of his political responsibilities.' Id., at 863, 94 S.Ct. 2811 [, at 2821, 41 L.Ed.2d 514]. Cf. First National Bank of Boston v. Bellotti, 435 U.S. 765, 776-778, 98 S.Ct. 1407, [1415-1417, 55 L.Ed.2d 707] (1978)." 99 S.Ct. 2914-2915. (Emphasis added and footnote omitted.)
Justice Blackmun, speaking for the dissent of four after a comprehensive review of controlling history and authority, writes:
"I therefore conclude that the Due Process Clause of the Fourteenth Amendment, insofar as it incorporates the public trial provision of the Sixth Amendment, prohibits the States from excluding the public from a proceeding within the ambit of the Sixth Amendment's guarantee without affording full and fair consideration to the public's interests in maintaining an open proceeding. And I believe that the Sixth and Fourteenth Amendments require this conclusion notwithstanding the fact it is the accused who seeks to close the trial." 99 S.Ct. at 2932-2933. (Emphasis added and footnote omitted.)
* * *
"The Sixth Amendment, in establishing the public's right of access to a criminal trial and a pretrial proceeding, also fixes the rights of the press in this regard. Petitioner, as a newspaper publisher, enjoys the same right of access to the Jackson v. Denno [, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] hearing at issue in this case as does the general public. And what petitioner sees and hears in the courtroom it may, like any other citizen, publish or report consistent with the First Amendment. `Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom.' Sheppard v. Maxwell, 384 U.S., at 362-363, 86 S.Ct. 1507 [, at 1522, 16 L.Ed.2d 600, 6 Ohio Misc. 231, 35 Ohio Ops.2d 431]. Reporters for newspaper, television, and radio `are entitled to the same rights as the general public' to have access to the courtroom, Estes v. Texas, 381 U.S., at 540, 85 S.Ct. 1628, [at 1631, 14 L.Ed.2d 543,] where they `are always present if they wish to be and are plainly free to report whatever occurs in open court through their respective media.' * *" 99 S.Ct. at 2939.
The public and the press, therefore, have more than just an interest. They have a constitutionally guaranteed right. Thus, under close scrutiny, the majority in Gannett agrees that there is a constitutionally protected right, they simply do not see eye to eye on its derivation.
There is no question but that the public, including the media, has standing to and may interject itself into a criminal proceeding. A criminal prosecution is not a private affair from which the public can be precluded. To say that the public cannot personally or through its agent, the media, attend is tantamount to the clients of the attorneys being ejected from the courtroom. The prosecutor has the public as his client. In passing, I would note that the following quote from Gannett appearing in the majority opinion in the cases before us does not represent the real majority view in that case: "In an adversary system of criminal justice, the public interest in the administration of justice is protected by the participants in the litigation." That statement represents no more than the personal view of Justice Stewart  dictum. The public is not a stranger. It is their case being tried. I would add that in Gannett the public, through the news media, was given standing to litigate the issue of closure as it was in Nebraska Press Assn. v. Stuart, infra. The majority forgets that the courts belong to the public, not judges or attorneys.
The so-called "hearing" on the motion[2] for closure, much discussed by the majority, ended up being no hearing at all. Counsel for the Casper Star-Tribune and KTWO *1272 appeared to object to closure of the preliminary hearing. After some attempt to urge the right of participation, he was denied that right of appearance on the ground that he, as an attorney for the news media, had no standing to remain and test the propriety of the closing and was not permitted to remain for the closure hearing. The closure hearing was closed to him. The commissioner indicated that counsel for the media could remain as an officer of the court, as apparently any other attorney could. Two attorneys, apparently unconnected with the case, did remain. Counsel for the media did not ask that news reporters be permitted to remain or that the proceedings be published. Counsel for the media properly made it clear he could not ethically wear two hats and departed.
A significant point not yet made is that the prosecutor in this case opposed closing the preliminary hearing. In this respect, the case is not like Gannett or Williams, where the prosecutor agreed to closure. All that ensued at the "hearing" was an open-ended discussion of Williams and Gannett. There just simply was no showing, no substantive presentation was made, that this is an exceptional case requiring closure because the alternatives would not effectively protect the defendant. "Exceptional" means the presence of circumstances which are unusual or extraordinary. Black's Law Dictionary, Fifth Edition, 1979.
The affidavit to which the commissioner refers as possibly prejudicial to a fair trial if publicized is the ordinary affidavit used to support probable cause for the issuance of a warrant. Rule 4(a), W.R.Cr.P. No one argues that hearsay may not be included in the affidavit. It is merely the basis for probable cause to believe that an offense has been committed and that the defendant has committed it. It is a sworn recitation of knowledge of facts used to justify issuance of a warrant. Such an affidavit must be filed in every case before a warrant shall issue. It is intended that every statement contained in an affidavit should point to the probable guilt of the defendant charged  that is nothing unusual. Certain statements of the defendants Howell and Little purportedly made to the affiant are also included in the affidavit. It is expected that the State will be put on its proof of all those matters at the trial. There is nothing unusual or exceptional about that. The only purpose of a preliminary hearing is to establish to the satisfaction of the County Judge, Magistrate, or Justice of the Peace that there is probable cause to believe that an offense has been committed and that the defendant charged has committed it. Rule 7, W.R.Cr.P. It is not the purpose of the preliminary hearing to prove guilt. Evidence at a preliminary hearing may or may not be admissible at the trial. There is nothing unusual about that. Scores of murder cases pass through the same procedures as those followed here. Most of them have a very similar profile. One of the first things to be impressed upon a trial jury by the counsel, as well as by the court, is that it must decide the case on the basis of evidence admitted by the court at trial.
An additional consideration is that there was no showing made that the voluntary cooperation of the news media in delaying dissemination of potentially prejudicial information by means of public communications was sought. Nor was there any showing of any "clear and present danger to the fairness of the trial." Clear and present danger are particularly applicable to First Amendment rights. Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; Whitney v. People of California, 1927, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095; Schenck v. United States, 1919, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470. As said by Justice Brandeis' concurring opinion in Whitney, supra:
"Fear of serious injury cannot alone justify suppression of free speech and assembly. Men feared witches and burnt women. It is the function of speech to free men from the bondage of irrational fears. To justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced. There must be reasonable ground to believe that the danger *1273 apprehended is imminent. There must be reasonable ground to believe that the evil to be prevented is a serious one. * * *
* * *
"Those who won our independence by revolution were not cowards. They did not fear political change. They did not exalt order at the cost of liberty. To courageous, self-reliant men, with confidence in the power of free and fearless reasoning applied through the processes of popular government, no danger flowing from speech can be deemed clear and present, unless the incidence of the evil apprehended is so imminent that it may befall before there is opportunity for full discussion. If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence. Only an emergency can justify repression. Such must be the rule if authority is to be reconciled with freedom. Such, in my opinion, is the command of the Constitution. It is therefore always open to Americans to challenge a law abridging free speech and assembly by showing that there was no emergency justifying it." (Footnote omitted.) 47 S.Ct. at 648-649.
All that was expressed by the proponents of closure at the "hearing" was fear  unsupported fear  no facts  only conjecture.
What kind of a hearing should there really be? The majority (Powell and the four "dissenters") in Gannett conceive the type of hearing there should be. Justice Powell:
"* * * Upon timely objection to the granting of the motion [for closure], it is incumbent upon the trial court to afford those present a reasonable opportunity to be heard on the question whether the defendant is likely to be deprived of a fair trial if the press and public are permitted to remain in attendance. At this hearing, it is the defendant's responsibility as the moving party to make some showing that the fairness of his trial likely will be prejudiced by public access to the proceedings. Similarly, if the State joins in the closure request, it should be given the opportunity to show that public access would interfere with its interests in fair proceedings or preserving the confidentiality of sensitive information. On the other hand, members of the press and public who object to closure have the responsibility of showing to the court's satisfaction that alternative procedures are available that would eliminate the dangers shown by the defendant and the State." 99 S.Ct. at 2916.
Justice Blackmun for the dissent:
"* * * The accused who seeks closure should establish, however, at a minimum the following:
"First, he should provide an adequate basis to support a finding that there is a substantial probability that irreparable damage to his fair trial right will result from conducting the proceeding in public. This showing will depend on the facts. But I think it requires evidence of the nature and extent of the publicity prior to the motion to close in order to establish a basis for the trial court to conclude that further coverage will result in the harm sought to be prevented. In most cases, this will involve a showing of the impact on the jury pool. This seldom can be measured with exactness, but information relating to the size of the pool, the extent of media coverage in the pertinent locality, and the ease with which change of venire can be accomplished or searching voir dire instituted to protect against prejudice, would be relevant. The court also should consider the extent to which the information sought to be suppressed is already known to the public, and the extent to which publication of such information, if unknown, would have an impact in the context of the publicity that has preceded the motion to close.
"Second, the accused should show a substantial probability that alternatives to closure will not protect adequately his right to a fair trial. One may suggest numerous alternatives, but I think the following should be considered: continuance, severance, change of venue, change of venire, voir dire, peremptory challenges, *1274 sequestration, and admonition of the jury. ABA Project on Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press Standard 8-3.2, at 16 (App.Draft 1978). See Nebraska Press Assn. v. Stuart, 427 U.S. [537], at 562-565, 96 S.Ct. 2791, [at 2804-2806, 49 L.Ed.2d 683], Sheppard v. Maxwell, 384 U.S., at 354 n. 9, 358-362, 86 S.Ct. 1507, [at 1518 n. 9, 1519-1522, 16 L.Ed.2d 600, 6 Ohio Misc. 231, 35 Ohio Ops.2d 431]. One or more of these alternatives may adequately protect the accused's interests and relieve the court of any need to close the proceeding in advance.
"I note, too, that for suppression hearings alternatives to closure exist that would enable the public to attend but that would limit dissemination of the information sought to be suppressed. At most such hearings, the issues concern not so much the contents of a confession or of a wiretap, or the nature of the evidence seized, but the circumstances under which the prosecution obtained this material. Many hearings, with care, could be conducted in public with little risk that prejudicial information would be disclosed.
"Third, the accused should demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm. Where significantly prejudicial information already has been made public, there might well be little justification for closing a pretrial hearing in order to prevent only the disclosure of details.
"I emphasize that the trial court should begin with the assumption that the Sixth Amendment requires that a pretrial suppression hearing be conducted in open court unless a defendant carries his burden to demonstrate a strict and inescapable necessity for closure. There should be no need for a representative of the public to demonstrate that the public interest is legitimate or genuine, or that the public seeks access out of something more than mere curiosity. Trials and suppression hearings by their nature are events of legitimate public interest, and the public need demonstrate no threshold of respectability in order to attend. This is not to say, of course, that a court should not take into account heightened public interest in cases of unusual importance to the community or to the public at large. The prosecution of an important office holder could intensify public interest in observing the proceedings, and the court should take that interest into account where it is warranted. It is also true, however, that as the public interest intensifies, so does the potential for prejudice.
"As a rule, the right of the accused to a fair trial is compatible with the interest of the public in maintaining the publicity of pretrial proceedings. `In the overwhelming majority of criminal trials, pretrial publicity presents few unmanageable threats to this important right.' Nebraska Press Assn. v. Stuart, 427 U.S., at 551, 96 S.Ct. [2791, at 2799, 49 L.Ed.2d 683]. Our cases `cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process.' Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, [2036], 44 L.Ed.2d 589 (1975). * * *" (Footnote omitted.) 99 S.Ct. at 2937-2938.
No hearing was held that could be said to satisfy either, or a combination of both, of these formulas. I would also point out that under Williams v. Stafford, supra, while the majority held the hearing for closure should be closed, there is no indication that the media should be banned for the purpose of representation and resistance to the motion. While I do not agree that it should be closed in any aspect, if it is to be the law of this jurisdiction that it be closed for publicity purposes, the press with its right to be heard should at least be allowed the presence of its counsel and such witnesses as it may call.
The summary disposition of the county court commissioner assumes the inadequacy *1275 of counsel at the trial to conduct an appropriate voir dire, assumes the inadequacy of jurors to base their verdict on the evidence before them, assumes the inadequacy of the trial judge to properly instruct the jury in controversial matters, assumes the inadequacy of a jury to follow the court's instructions. For all intents and purposes, it also sets aside § 7-11-106, W.S. 1977:
"In the trial of criminal cases it shall not be cause for challenge that a person called to act as a juror has formed or expressed an opinion as to the guilt or innocence of the accused from newspaper reports and rumor, or from either of them, if such person swear that he can impartially try the case according to the law and evidence notwithstanding such opinion."
One of the best examples that news stories very likely have little, if any, effect on the trial outcome is the case out of which arose Williams v. Stafford, supra, State v. Edward L. Cantrell, of which judicial notice may be taken. The news coverage was massive with respect to the preliminary hearing. The news items disclosed evidence both favorable and unfavorable to the defendant, including what was probably evidence inadmissible at the trial. The trial judge changed the venue. The defendant was acquitted, eliciting further reporting and editorial comment over an apparently unexpected outcome. What the public sees, hears, reads and believes and what the jury sees, hears and holds are two entirely different pictures.
In referring to the affidavits the court commissioner's decision letter states, "These statements, if disseminated may well constitute prejudicial pretrial publicity making it difficult or perhaps impossible to empanel an impartial jury in Natrona County District Court." (Emphasis added.) This indicates that the commissioner failed to consider the alternative of a change of venue, which he must in order to conform to this court's standards.
The commissioner did not gag counsel, but gagged witnesses from discussing "their testimony with the public in general or the media, or other witnesses." At the same time, he only allowed the addressees of his decision letter, "the three main Attorneys" which did not include counsel for the media to examine and have copies of the closed proceedings and the decision letter.[3] That is the equivalent of this court's not permitting any but "the three main Attorneys" to have copies of the court's opinion in this case. As I remonstrated in my dissent in Williams:
"The petitioners, in the important matter before us, are at a terrible disadvantage. They do not have available the tapes or a transcript. The court has set aside the usual adversary process which is the heart of the judicial function whereby all sides of the question are permitted to be argued. Petitioners cannot express their views as to how prejudicial any part of the secret hearing might be. They are asked to just trust that the court will do the right thing. We had better be right. It is for that reason, `... any claim of practical justification for a departure from the constitutional requirement of a public trial must be tested by a standard of strict and inescapable necessity.' [Citing case.]" 589 P.2d at 334.
There is no consideration by the commissioner of the alternatives to closure other than to a reference to a trial in Natrona County. A change of venue was not considered to overcome any prejudice that might arise from an open hearing. It *1276 would be well to repeat what the majority of the United States Supreme Court said about the alternatives in Nebraska Press Assn. v. Stuart, 1976, 427 U.S. 539, 96 S.Ct. 2791, 2795, 49 L.Ed.2d 683, which case Gannett has not overruled. In that case the trial court found "a clear and present danger that pre-trial publicity could impinge upon the defendant's right to a fair trial." (Emphasis added.) In this case the commissioner speculated that dissemination "may well constitute prejudicial pretrial publicity." (Emphasis added.) The Supreme Court of the United States said:
"* * * Although the entry of the order might be read as a judicial determination that other measures would not suffice, the trial court made no express findings to that effect; the Nebraska Supreme Court referred to the issue only by implication. [Citing case.]
"Most of the alternatives to prior restraint of publication in these circumstances were discussed with obvious approval in Sheppard v. Maxwell, 384 U.S., at 357-362, 86 S.Ct., at 1519-1522: (a) change of trial venue to a place less exposed to the intense publicity that seemed imminent in Lincoln County; (b) postponement of the trial to allow public attention to subside; (c) searching questioning of prospective jurors, as Mr. Chief Justice Marshall used in the Burr case [25 Fed.Cas. No. 14,692g, p. 49 (CC Va. 1807)], to screen out those with fixed opinions as to guilt or innocence; (d) the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court. Sequestration of jurors is, of course, always available. Although that measure insulates jurors only after they are sworn, it also enhances the likelihood of dissipating the impact of pretrial publicity and emphasizes the elements of the jurors' oaths.
"This Court has outlined other measures short of prior restraints on publication tending to blunt the impact of pretrial publicity. See Sheppard v. Maxwell, supra, at 361-362, 86 S.Ct., at 1521-1522. Professional studies have filled out these suggestions, recommending that trial courts in appropriate cases limit what the contending lawyers, the police, and witnesses may say to anyone. See American Bar Association Project on Standards for Criminal Justice, Fair Trial and Free Press 2-15 (App.Draft 1968).
"We have noted earlier that pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial. The decided cases `cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process.' Murphy v. Florida, 421 U.S., at 799, 95 S.Ct., at 2036. Appellate evaluations as to the impact of publicity take into account what other measures were used to mitigate the adverse effects of publicity. The more difficult prospective or predictive assessment that a trial judge must make also calls for a judgment as to whether other precautionary steps will suffice.
"We have therefore examined this record to determine the probable efficacy of the measures short of prior restraint on the press and speech. There is no finding that alternative measures would not have protected Simants' rights, and the Nebraska Supreme Court did no more than imply that such measures might not be adequate. Moreover, the record is lacking in evidence to support such a finding." (Footnotes omitted.) Nebraska Press Assn. v. Stuart, 96 S.Ct. at 2805-2806.
It must be concluded that there was no application of the approved standards for closure, and thus the closing was arbitrary and an abuse of discretion.
I have joined in the dissent of Justice Rooney because I consider it a desirable alternative. In Williams v. Stafford, supra, we invited the media to use mandamus and district courts to take jurisdiction and conduct the review of the inferior court's action *1277 in closure matters. Now the court does a turnabout and effectively holds that district courts have no jurisdiction to test for abuse of discretion.
I would have denied both applications for writs of prohibition and granted the motion to affirm filed by the respondent Harriscope, No. 5245, thus leaving intact the district court's order to open the preliminary proceedings to the public and the press.
ROONEY, Justice, dissenting, in which RAPER, Chief Justice, joins.
I can agree with most of the law set forth both in the majority opinion and in the dissenting opinion of Chief Justice Raper. However, I do not believe such law to be pertinent to the matter before us.
We are presented with two applications for writs of prohibition. They seek an order prohibiting enforcement of a writ of mandamus issued by the District Court of the Seventh Judicial District.[1] The object of a writ of prohibition is to restrain the action of inferior courts from acting in excess of their jurisdiction. State ex rel. Pearson v. Hansen, Wyo., 409 P.2d 769 (1966); State ex rel. Mau v. Ausherman, 11 Wyo. 410, 72 P. 200 (1903), reh. den. 11 Wyo. 410, 73 P. 548 (1903). As said in Williams v. Stafford, Wyo., 589 P.2d 322, 324 (1979):
"* * * The function of a writ of prohibition is to prevent action and not to undo that which has already been done. State ex rel. Powell v. Ilsley, Wyo., 387 P.2d 676, 677 (1963); and State ex rel. Mau v. Ausherman, 11 Wyo. 410, 72 P. 200, 214, rehearing denied 73 P. 548 (1902). It is also important to note and emphasize that, other than in exceptional or extraordinary circumstances, the writ of prohibition is only available if the lower court does not have subject-matter jurisdiction or, having such jurisdiction, it exceeds the scope thereof. State ex rel. Weber v. Municipal Court of the Town of Jackson, Wyo., 567 P.2d 698, 699 (1977)."
In Williams v. Stafford, the proceeding was treated as one for a writ of mandamus although the petitioner had improperly requested a writ of prohibition. Such is not the situation in this case. It is a writ of prohibition that is requested and which would be proper if the relief were granted.
The question here, then, is whether or not jurisdiction existed in the District Court of the Seventh Judicial District to entertain the petition for mandamus. We are not called upon to decide whether or not the court acted properly  only if it had jurisdiction to act at all. The same or similar reasons to restrict our review to this question are those set forth in the majority opinion for restricting review to the question on mandamus of whether or not the act in question was ministerial. Therefore, it would serve little purpose here to repeat such logic as it applies to the extent of our review of a writ of prohibition.
A writ of prohibition will not lie to correct errors in practice or proceedings. Dobson v. Westheimer, 5 Wyo. 34, 36 P. 626 (1894); State ex rel. Mau v. Ausherman, supra. It will lie to prevent action in excess of jurisdiction, but not to prevent erroneous exercise of jurisdiction. English v. McCrary, Fla., 348 So.2d 293 (1977).
We directed that mandamus proceedings in cases such as this "in the future should be brought first before a lower court whenever possible," and we concluded that "the function of a reviewing court in dissemination cases is to determine whether there has been an abuse of discretion" in the process of applying the standards adopted by us to the particular case. Williams v. Stafford, supra, 589 P.2d at 325, 327 (emphasis in quoted material not supplied).
I conclude that the District Court of the Seventh Judicial District has jurisdiction to entertain the petition for a writ of mandamus. Whether or not he properly exercised *1278 that jurisdiction is not an issue properly placed before us in a writ of prohibition.
Writs of prohibition are not favored and are issued with caution and are not issued in a doubtful case. State ex rel. Pearson v. Hansen, supra; State ex rel. Powell v. Ilsley, Wyo., 387 P.2d 676 (1963). They will not issue if there is another adequate remedy, such as appeal. State ex rel. Kane v. Dobler, 53 Wyo. 252, 81 P.2d 300 (1938); State ex rel. Richmond v. District Court of Second Judicial District within and for Albany County, 45 Wyo. 29, 14 P.2d 673 (1932); State ex rel. Sheehan v. District Court of Fourth Judicial District in and for Johnson County, Wyo., 426 P.2d 431 (1967).
An appeal has been docketed on the issue which is the foundation for this proceeding. I would exercise the discretionary power available for use in connection with applications for writs of prohibition, State ex rel. Jones v. District Court of Ninth Judicial District, 37 Wyo. 516, 263 P. 700 (1928); State ex rel. Pearson v. Hansen, supra, and deny the petition.
NOTES
[1] The Judge first entered a "Writ of Mandamus," which, by its terms, was an "alternative" writ of mandamus and was in effect a show-cause order.

Subsequently, the court made and entered its "Findings, Conclusions, Order Ruling on Motions to Dismiss and Judgment." However, a writ of mandamus was never issued as provided for in § 1-30-107, W.S. 1977. We will, however, treat these cases as though the court's order called for the clerk of the court to issue a writ of mandamus and that such writ of mandamus was in fact issued.
[2] The word "pretrial," as used in this opinion, means any hearing prior to the actual trial.
[3] It is to be noted here that while the court accepts for decision in this opinion the issue raised by Harriscope's attack upon the decision of Commissioner Feeney by a petition for a writ of mandamus, the majority Justices have grave concern with reference to the question of whether or not Harriscope or any other member of the public has standing to pursue a writ of mandamus to attack the decision-making function of the commissioner.

While we reserve the standing question for future consideration, we take time here to observe that the law may well be that the only parties with standing to lawfully attack the judgment of a magistrate in pretrial matters are either the State or one of the defendants. This leads to the conclusion that no member of the public (including the news media) has standing to interject himself into the criminal proceeding for this or any other purpose. It is worthwhile noting that the United States Supreme Court has said in Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979):
"... In an adversary system of criminal justice, the public interest in the administration of justice is protected by the participants in the litigation. .. ." 99 S.Ct. at 2907.
This would mean that the interest of strangers to the proceeding would have to be pursued in some other way.
The standing query will be reserved for another day, with the admonition that the majority considers this issue to be presently unresolved, either by reason of this decision or the holding in Williams v. Stafford, Wyo., 589 P.2d 322 (1979). In this opinion, therefore, the office of the writ of mandamus in lower-tribunal affairs will be considered as the determinative question, with standing of a public member to pursue mandamus to be later considered in depth should a future occasion present itself.
[4] It is true that in Williams we treated a petition for a writ of prohibition as a petition for a writ of mandamus in order to consider an issue very similar to the substantive issue in dispute here. However, until Williams, it had not been judicially determined if a judicial officer conducting a pretrial hearing had discretion to exclude the news media, and if he did, against what standards his discretion would be examined. Mandamus was the proper remedy in that case to test the claim that the justice of the peace lacked discretion to exclude the media and had, therefore, violated a ministerial duty in failing to conduct an open hearing. The Williams decision conferred upon judicial officers  if the common law had not already done so  authority to exclude the news media from pretrial hearings if, in the exercise of discretion, the judicial officer determined that an open hearing would create a clear and present danger to the defendant's ability to obtain a fair trial and the prejudicial effect of such information on trial fairness could not be avoided by any reasonable alternative means. Since Williams has settled the law in this regard, mandamus is no longer proper to challenge the action of a judicial officer in excluding the news media from a pretrial hearing  assuming that the decision to exclude the media was the result of the exercise of the judicial officer's discretion under Williams.

This does not mean that the public is without some other remedy to enforce its interest in open pretrial hearings or test the issue of abuse of discretion when a judicial officer closes the hearing by an erroneous exercise of his Williams discretion. We merely hold in this opinion that the extraordinary writ of mandamus may not be utilized to challenge the judicial officer's exercise of discretion, if, in fact, he had discretion. This leads to the conclusion, then, that where there is no evidence which will support the thesis that a closed pretrial hearing is necessary to protect fair-trial right, then mandamus would be appropriate to test closure since the judicial officer would then be without discretion to close the hearing, and, lacking evidence to confer discretion, would have a ministerial duty to conduct an open hearing. But, if there is some evidence which could reasonably be construed as creating a clear and present danger to a fair trial if the pretrial hearing is not closed, and in the judgment of the judicial officer there is no other practical way to avoid the threat to trial fairness, then the exercise of the judicial officer's discretion in closing the hearing must be tested by ordinary remedies instead of the extraordinary writs.
[5] The very rationale for closing the hearing originally prevents us from discussing in any more detail the material which we feel must be temporarily kept from the public in order to avoid a clear and present danger to a fair trial.
[6] This material is taken verbatim from Commissioner Feeney's brief in response to the Writ of Mandamus issued by the District Court upon Harriscope's petition therefor. It provides an adequate summary of Harriscope's constitutional claims.
[7] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."
[8] In Gannett, supra, Mr. Justice Stewart, writing for the majority, said:

"... The history upon which the petitioner and amici rely totally fails to demonstrate that the Framers of the Sixth Amendment intended to create a constitutional right in strangers to attend a pretrial proceeding, when all that they actually did was to confer upon the accused an explicit right to demand a public trial... ." 99 S.Ct. at 2908.
[1] Justice Powell concurs on the basis that the First Amendment rights of the press and public must be weighed against the Sixth Amendment rights of the defendant. In this case Powell says he is able to conclude, on the basis of the hearing that was held, that the latter outweigh the former.
[2] The motion for closure was only one part of the total motion presented to the court. The hearing was closed as to the entire motion which also asked for a gag order to prevent members of the sheriff's office, the county and prosecuting attorney, witnesses and members of the press from discussing the case.
[3] The full text of the paragraph of the decision referred to:

"Additionally it should be noted that the respective Attorneys, as officers of the Court, will be permitted to obtain and review, but specifically not for photocopying, copies of the transcript of the closed proceedings on the motions and this decision letter. However, copies will be limited to the three main Attorneys; Mr. Schroeder, Mr. Bondi and Mr. Tristani. I will not order `gag' rules pursuant to Nebraska Press Association v. Hugh Stuart, but if you want copies, I expect full compliance with the closure order of this Court under penalty of contempt sanctions. I also expect continued highly professional behavior standard and conduct in this matter."
[1] With reference to writs of mandamus and prohibition:

"* * * In a general sense they are counterparts of each other in their object and purpose, but only to the extent that one is prohibitory and the other mandatory; one acts on the person and the other acts on the tribunal; beyond that they have little in common. * * *" (Emphasis supplied.) 63 Am.Jur.2d Prohibition § 3, p. 228 (1972).